# EXHIBIT C

# EMPLOYMENT AGREEMENT

THIS EMPLOYMENT AGREEMENT ("Agreement") is made effective as of the _____ day of May 2012 ("Effective Date") by and between LifeNet Health, a Virginia non-stock corporation with a principal office at 1864 Concert Drive, Virginia Beach, Virginia 23453-1903 ("LifeNet Health"), and **Michael Francis** who resides at 324 Colonial Avenue # 4 Norfolk, VA 23507 ("Employee").

WHEREAS, LifeNet Health desires to employ Employee to assist with and contribute to the business of LifeNet Health; and

WHEREAS, Employee desires to be employed or, if applicable, to continue to be employed by LifeNet Health and expects to gain substantial benefit from such a relationship with LifeNet Health; and

WHEREAS, LifeNet Health will disclose certain LifeNet Health Confidential Information (defined below) to Employee during his or her employment with LifeNet Health, and both parties agree that this Agreement is necessary to protect such LifeNet Health Confidential Information;

NOW, THEREFORE, in consideration of the mutual promises herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the parties hereto agree as follows:

**1.    Employment**

1.1    Capacity.  LifeNet Health agrees to employ or, if applicable, continue to employ Employee in the capacity of **Research and Development Scientist**.  Employee hereby accepts such employment or, if applicable, continued employment and assumes responsibility for performing the duties that LifeNet Health assigns to him or her in this or any future capacity.

1.2    At-Will Relationship.  Employee hereby acknowledges and agrees that his or her employment by LifeNet Health will be "employment at will" and that his or her employment may be terminated by LifeNet Health or by himself or herself at any time, with or without cause, and with or without notice.  Nothing in this Agreement will be construed to constitute an agreement, understanding, or commitment of any kind that Employee will continue his or her employment with LifeNet Health or that LifeNet Health will continue to employ Employee, nor will this Agreement limit in any way Employee's or LifeNet Health's right to terminate Employee's employment at any time for any reason.

1.3    Prior Proprietary Information.  Employee acknowledges and agrees that, as of the Effective Date, Employee does not own or have exclusive rights in or to any idea, invention, work of authorship, trade secret, or other information or non-public materials.  Employee further agrees not to disclose to LifeNet Health or use in LifeNet Health's business any idea, invention, work of authorship, trade secret, or other information or non-public materials relating to the business of any third person and intended by that person not to be disclosed to LifeNet Health.

1

1.4    Computer Security and E-Mail Policy. During Employee's employment with LifeNet Health, Employee agrees to use only those computer resources (both on and off LifeNet Health's premises) to which Employee has been granted access and then only to the extent authorized. Employee agrees to comply with LifeNet Health's policies and procedures in respect of computer use and security. Employee understands that LifeNet Health maintains an electronic mail ("e-mail") system and related facilities for the purpose of business communications. Employee acknowledges and agrees that LifeNet Health has and will retain the right to review any and all of such e-mail communications, with or without notice, at any time.

1.5    Outside Activities. LifeNet Health and Employee agree that during his or her employment with LifeNet Health, Employee may not be remunerated for outside activities without LifeNet Health's prior written consent.

1.6    Non-Solicitation of Employees. Both during Employee's employment with LifeNet Health and for a period of twelve (12) months immediately following termination of Employee's employment with LifeNet Health (regardless of the reason or reasons for such termination), Employee agrees not to solicit, directly or indirectly, any of LifeNet Health's employees for employment with a person or entity involved in marketing or developing products or services competitive with the products or services that LifeNet Health sold or provided as of the last day of Employee's employment with LifeNet Health.

1.7    Non-Solicitation of Customers.

a.    

b.    For the purposes of this Section 1.7, "Protected Customer" means any person, business, or entity (i) that was known by Employee to have purchased product(s) or service(s) from LifeNet Health during the two-year (2-year) period immediately preceding Employee's last day of employment with LifeNet Health; (ii) that purchased products or services from LifeNet Health during the two-year (2-year) period immediately preceding Employee's last

I-1059240.1

day of employment with LifeNet Health and about which Employee had access to LifeNet Health Confidential Information (defined below) during this period; or (iii) that was known by Employee to have received (during the one-year [1-year] period prior to Employee's last day of employment with LifeNet Health) but not yet acted upon a proposal by LifeNet Health for the purchase of product(s) or receipt of service(s).

    1.8    <u>Non-Competition</u>.



    b.    For purposes of this Section 1.8, "<u>Competitor</u>" means "



    1.9    <u>Equitable Enforcement of Restrictive Covenants</u>.



**2.    Compensation**

    2.1    <u>Salary</u>. As compensation for Employee's services to LifeNet Health, and subject to Employee's compliance with and fulfillment of all of Employee's covenants, representations, duties, and obligations to LifeNet Health, LifeNet Health will pay to Employee while Employee is employed by LifeNet Health the salary and other compensation set forth on <u>Schedule A</u> hereto or such other salary and/or compensation as to which the parties may hereafter mutually agree in

I-1059240.1

writing, in any case payable on the same basis as other employees of LifeNet Health are generally paid.

2.2   <u>Withholding</u>.  Employee acknowledges and agrees that in the event LifeNet Health is required to deduct and withhold any federal, state, local or other taxes hereunder pursuant to any law or governmental regulation or ruling, LifeNet Health may do so without any further consent from Employee.  To the extent, if any, any taxes are so withheld by LifeNet Health, such amounts will be treated for all purposes under this Agreement as having been paid to Employee.

2.3   <u>Benefits</u>.  LifeNet Health acknowledges and agrees that Employee will be entitled to participate in such group medical and hospitalization, disability, and life insurance plans, if any, and in any other employee benefits as are now available or may hereafter be made available to employees of LifeNet Health who occupy a position comparable to Employee's position in capacity and compensation, provided that LifeNet Health reserves the right to terminate, upon five (5) days' prior notice to Employee, any or all of such benefits at any time that it terminates the same benefit(s) for other employees of comparable capacity and/or compensation.  The terms of the individual plan shall govern Employee's participation.

**3.   LifeNet Health Confidential Information**

The term "<u>LifeNet Health Confidential Information</u>" means any and all confidential and/or proprietary knowledge, data, or information of LifeNet Health and its existing and future businesses (including without limitation any and all marketing plans, cost and pricing information, terms of dealing, and lists of past, present, or prospective customers) and any and all confidential and/or proprietary knowledge, data, or information that LifeNet Health has obtained or obtains from another party and that LifeNet Health treats as confidential and/or proprietary or designates as LifeNet Health Confidential Information.  Notwithstanding the foregoing, the term "<u>LifeNet Health Confidential Information</u>" will not apply to information that LifeNet Health has voluntarily disclosed to the public without restriction or that has otherwise lawfully entered the public domain through no fault of Employee or any third party.  At all times during Employee's Employment with LifeNet Health and thereafter, Employee will hold in strictest confidence and will not directly or indirectly disclose, use, make available to any non-LifeNet Health personnel, sell, transfer, or otherwise use or exploit, permit the use or exploitation, remove from LifeNet Health's premises, or retain upon termination of Employee's Employment with LifeNet Health, any LifeNet Health Confidential Information or any copies thereof, except as may strictly be required in connection with Employee's normal duties with LifeNet Health.  Employee acknowledges and agrees that in the event of the unauthorized use or disclosure of any of LifeNet Health Confidential Information by Employee, LifeNet Health's business interests will be irreparably injured, the full extent of LifeNet Health's damages will be impossible to ascertain, monetary damages will not be an adequate remedy for LifeNet Health, and LifeNet Health will be entitled to enforce this Agreement by an injunction or other equitable relief, without the necessity of posting bond or security in connection therewith, which necessity Employee expressly waives.

**4.   Intellectual Property**

Employee acknowledges and agrees that LifeNet Health owns, and will own, whether as "works made for hire" or otherwise, any and all documents, designs, drawings, charts, computer

I-1059240.1

program code, computer software, specifications, notes, inventions, improvements, discoveries, and other works of any kind (collectively, "Works") that Employee creates or develops, whether alone or with others, in the course of Employee's employment with LifeNet Health, regardless of whether any such Work is in printed, mechanical, electronic, or other form and regardless of whether any such Work may be subject to patent, copyright, trademark, domain name, trade secret, mask work, or other legal protection.  To the extent, if any, that LifeNet Health does not by operation of law automatically own all right, title, and interest in and to all such Works, Employee agrees to assign, and hereby does assign, to LifeNet Health any and all of his or her right, title, and interest in and to all such Works.  Employee agrees to disclose promptly and routinely to LifeNet Health any and all Works and also agrees, upon LifeNet Health's request, promptly (a) to execute and deliver to LifeNet Health any and all documents and (b) to take any and all actions necessary or desirable for LifeNet Health to perfect and enjoy any of the rights owned by, or assigned to, LifeNet Health hereunder.  Employee agrees never to exploit, challenge, seek to register, or assign or license to any third party, directly or indirectly anywhere in the world, any of the rights owned by, or assigned to, LifeNet Health hereunder.  Employee understands that the term "moral rights" means any rights of paternity or integrity, including any right to claim authorship of a copyrightable work, any right to object to a modification of such copyrightable work, and any similar right existing under the judicial or statutory law of any country in the world or under any treaty, regardless of whether or not such right is denominated or generally referred to as a "moral right."  Employee hereby waives forever and agrees never to assert any moral rights that he or she may have in any copyrightable work assigned to LifeNet Health hereunder, even following termination of Employee's employment with LifeNet Health (regardless of the reason or reasons for such termination).

5. **General Provisions.**

   5.1   Assignment.  Employee may not assign or delegate Employee's interests in this Agreement or any portion thereof, as the performance by Employee of his or her duties under this Agreement is personal in nature.

   5.2   Termination and Survivability.  This Agreement will remain in force so long as Employee is engaged by LifeNet Health.  The following sections of this Agreement will survive its termination for any reason and remain in full force and effect: 1.3, Prior Proprietary Information; 1.6, Non-Solicitation of Employees; 1.7, Non-Solicitation of Customers; 1.8, Non-Competition; 3, LifeNet Health Confidential Information; 4, Intellectual Property; 5.2, Termination and Survivability; 5.3, Severability; 5.4, Reformation; 5.6, No Waiver of Breach or Remedy; and 5.7, Governing Law.

   5.3   Severability.  Should any provision of this Agreement be held by a court of competent jurisdiction to be unenforceable, or enforceable only if modified, such holding will not affect the validity of the remainder of this Agreement, the balance of which will continue to be binding upon the parties hereto with any such modification to become a part hereof and treated as though contained in this original Agreement.

   5.4   Reformation.  The parties hereto agree that any court or arbitrator of competent jurisdiction is expressly authorized to modify any unenforceable provision of this Agreement in lieu of severing the unenforceable provision from this Agreement in its entirety, whether by

rewriting the offending provision, deleting any or all of the offending provision, adding additional language to this Agreement, or by making such other modification that the court or arbitrator deems warranted to carry out the agreement of the parties. The parties hereto expressly agree that this Agreement as so modified by the court or arbitrator will be binding upon and enforceable against each of them.

5.5     Entire Agreement. This Agreement, together with Schedule A, constitutes the entire understanding and agreement between the parties hereto with respect to the subject matter hereof and supersedes all prior agreements and understandings between LifeNet Health and Employee with respect to the subject matter hereof.

5.6     No Waiver of Breach or Remedy. A waiver by LifeNet Health of the breach of any of the provisions of this Agreement by Employee will not be deemed a waiver by LifeNet Health of any subsequent breach, nor will recourse to any remedy hereunder be deemed a waiver of any other or further relief or remedy provided for herein.

5.7     Governing Law. This Agreement, and the rights and obligations of LifeNet Health and Employee hereunder, will be governed by and construed in accordance with the laws of the Commonwealth of Virginia applicable to contracts made and to be performed therein and, if applicable, to the intellectual property laws of the United States. With respect to any suit, action, or proceeding relating to any award or any action to compel arbitration of any dispute or controversy arising out of or relating to this Agreement, each party irrevocably: (a) consents and submits to the exclusive jurisdiction of any United States federal court or state court sitting in Norfolk, Virginia; (b) waives any objection that it may have at any time to the laying of venue of any such suit, action, or proceeding brought in such court; (c) waives any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum; (d) waives the right to object, with respect to any such claim, suit, action, or proceeding brought in any such court, that such court does not have jurisdiction over the party; and (e) waives all right to trial by jury.

IN WITNESS WHEREOF, the parties hereto, intending to be legally bound, have set their hands and seals hereunto as of the date(s) set forth below.

**LIFENET HEALTH**                                **EMPLOYEE**

By:_____                       _____/s/_____

Title:_____                      Name: Michael Francis

Date:_____                       Address: 324 Colonial Ave #4

                                                  Norfolk, VA 23507

                                                  Date: May 2, 2012

A-1

## SCHEDULE A

## COMPENSATION

I-1059240.1