# EXHIBIT D

# CONFIDENTIALITY, NON-COMPETITION, NON-SOLICITATION, AND INTELLECTUAL PROPERTY AGREEMENT

THIS CONFIDENTIALITY, NON-COMPETITION, NON-SOLICITATION AND INTELLECTUAL PROPERTY AGREEMENT ("Agreement") is made by and between LifeNet Health, a Virginia non-stock corporation with a principal office at 1864 Concert Drive, Virginia Beach, Virginia 23453-1903, and __Nathan Kemper__ ("Employee").

I.   RECITALS

    A.   Employee would like to be employed, or to continue to be employed, by LifeNet Health or one of its wholly owned subsidiaries. LifeNet Health and its wholly owned subsidiaries shall be referred to collectively herein as "LifeNet";

    B.   LifeNet desires to employ Employee to assist with and contribute to the business of LifeNet;

    C.   LifeNet anticipates spending time, energy, and funds properly training Employee in key facets of its business; and

    D.   Employee expects to obtain financial benefit by reason of Employee's employment or continued employment with LifeNet. In order to obtain such benefit, Employee must have continuing access to certain LifeNet Confidential Information; and

    E.   Employee acknowledges and agrees that LifeNet has legitimate business reasons for protecting LifeNet Confidential Information, as well as its customer relationships, and that the provisions of this Agreement are reasonable and necessary for this protection. Employee further acknowledges and agrees that these provisions do not and will not place an undue hardship on Employee's ability to earn a livelihood.

## AGREEMENT:

NOW, THEREFORE, in consideration of the mutual promises herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the parties hereto agree as follows:

    1.   Definitions. The following will constitute definitions of certain specified terms used in this Agreement:

        (a)   "Competitive Business." A "Competitive Business" shall mean a business or entity that competes with LifeNet within the Market Territory.

        (b)   "Competitive Services." "Competitive Services" shall mean any services which are the same as or similar to services that Employee provided for LifeNet and which relate to human tissue products which are competitive with the products sold or provided by LifeNet.

I-1207636.4

NK 03/07/14

(c) "Market Territory." The "Market Territory" shall mean any state in the United States in which LifeNet is actively marketing, selling, or providing its products or services as of Employee's last date of employment with LifeNet.

(d) "Period of Protection." The "Period of Protection" shall be the twelve (12) month period following Employee's last day of employment with LifeNet (regardless of the reason Employee's employment ended).

(e) "Protected Customer." A "Protected Customer" shall mean any business or entity:

(i) To which LifeNet sold or provided its services or products at any time during the one-year period immediately preceding Employee's separation from employment with LifeNet; or

(ii) Which has received, but has not yet acted upon, a proposal from LifeNet related to the purchase of products or provision of services from LifeNet.

(f) "Significant Business Contacts." "Significant Business Contacts" shall mean:

(i) Employee's maintenance of ongoing business contacts with a Protected Customer on behalf of LifeNet;

(ii) Employee's actual sale of product(s) or service(s) to a Protected Customer on behalf of LifeNet;

(iii) Employee's provision of services to a Protected Customer on behalf of LifeNet; or

(iv) Employee's receipt of LifeNet Confidential Information concerning the Protected Customer.

2. At-Will Employment. Employee hereby acknowledges and agrees that his/her employment by LifeNet will be one of "employment-at-will" and that his/her employment may be terminated by LifeNet or by him/herself at any time, with or without cause, and with or without notice. Nothing in this Agreement will be construed to constitute an agreement, understanding, or commitment of any kind that Employee will continue such employment with LifeNet or that LifeNet will continue to employ Employee for any particular term, nor will this Agreement limit in any way Employee's or LifeNet's right to terminate Employee's employment at any time for any reason

3. Prior Proprietary Information. If, as of the effective date of this Agreement, Employee claims to own or have exclusive rights in or to (whether solely or in conjunction with others) any idea, invention, work of authorship, trade secret, or other information or non-public materials (collectively, "Prior Proprietary Information"), Employee will attach hereto as Exhibit 1, prior to Employee's executing this Agreement, a list of any and all Prior Proprietary Information. LifeNet will maintain such disclosures in confidence and with the objective of avoiding any conflict of obligations and rights or the appearance of any conflict of interest. Employee agrees that

Employee's not attaching such a list hereto will (a) be an acknowledgement by Employee that Employee does not own any Prior Proprietary Information and (b) preclude Employee from later claiming that Employee does own any Prior Proprietary Information. Employee agrees not to disclose to LifeNet in detail, to use in LifeNet's business or for LifeNet's benefit, or to use in connection with Employee's performance hereunder any Prior Proprietary Information without the prior written consent of LifeNet. Employee further agrees not to disclose to LifeNet or use in LifeNet's business any non-public idea, invention, work of authorship, trade secret, or other information or materials relating to the business of any third party and intended by that party not to be disclosed to LifeNet.

4. Computer Security and E-Mail Policy. During Employee's employment with LifeNet, Employee agrees to use only those computer resources (both on and off LifeNet's premises) to which Employee has been granted access and then only to the extent authorized by LifeNet. Employee agrees to comply with LifeNet's policies and procedures with respect to computer use and security. Employee understands that LifeNet maintains an electronic mail ("e-mail") system and various other electronic systems for the purpose of business communications. Employee acknowledges and agrees that he/she has no expectation of privacy over such email or computer usage and that LifeNet has and will retain the right to review any and all such e-mail communications and computer usage, with or without notice, at any time.

5. Outside Activities. LifeNet and Employee agree that during his/her employment with LifeNet, Employee may not engage in outside activities which have the potential to conflict with Employee's duties to LifeNet, or which create the appearance of a conflict of interest, without the express written consent of LifeNet.

6. LifeNet Confidential Information. Employee acknowledges and agrees that during his/her employment with LifeNet he/she will have access to certain LifeNet Confidential Information (defined below) and will occupy a position of trust and confidence with respect to LifeNet's affairs and business.

   (a) Obligations. Employee agrees to take the following steps to preserve the confidential and proprietary nature of LifeNet Confidential Information.

      (i) Non-Disclosure. During and after Employee's employment with LifeNet, Employee will not use, disclose, or transfer (for him/herself or any third party) any LifeNet Confidential Information other than as authorized by LifeNet within the scope of Employee's duties with LifeNet and will not use in any way other than in LifeNet's business any LifeNet Confidential Information, including information or material received by LifeNet from others and intended by LifeNet to be kept in confidence. Employee understands that he/she is not permitted or authorized to sell, license, or otherwise commercially exploit any products (including software in any form) that embody or are based upon, in whole or in part, any LifeNet Confidential Information.

      (ii) Disclosure Prevention. Employee will take all reasonable precautions to prevent the inadvertent or accidental disclosure of LifeNet Confidential Information.

      (iii) Removal. Employee will not remove any LifeNet Confidential Information from LifeNet's premises or make copies of such materials except for use in LifeNet's business.

I-1207636.4

*NK 03/07/14*

(iv) <u>Return</u>. Employee will return to LifeNet all LifeNet Confidential Information (including originals and copies thereof) at any time upon the request of LifeNet and in any event and without such request prior to the termination of Employee's employment by LifeNet. Employee agrees not to retain any tangible or intangible copies after termination of Employee's employment for any reason.

(b) <u>LifeNet Confidential Information</u>. The following materials and information, whether having existed, now existing, or to be developed or created during the term of Employee's employment by LifeNet (herein referred to collectively as the "<u>LifeNet Confidential Information</u>") are covered by this Agreement:

(i) <u>Research</u>. All information relating to products and processes in various stages of research and development that are not generally known to the public or within the industry or trade in which LifeNet competes (such as know-how, formulas, laboratory data, test results, methodologies, procedures, techniques, and research processes) and the physical embodiments of such information (such as drawings, specification sheets, research notes, flow charts, logic diagrams, procedural diagrams, work sheets, documentation, annotations, printouts, studies, manuals, proposals, and any other written or machine-readable manuals, proposals, and other expressions of such information as are fixed in any tangible medium).

(ii) <u>Other Products and Services</u>. All information relating to consulting, training, and other proprietary products or services, whether existing or in various stages of research and development, that are not generally known to the public or within the industry or trade in which LifeNet competes (such as know-how, specifications, technical data, laboratory data, processes, techniques, methodologies, and strategies) and the physical embodiments of such information (such as drawings, schematics, specification sheets, instructor manuals, course materials, training aids, video or audio discs, cassettes, or electronic files, transparencies, slides, electronic or filmed recordings of presentations, proposals, printouts, studies, contracts, maintenance manuals, documentation, and any other written or machine-readable expressions of such information as are fixed in any tangible medium).

(iii) <u>Business Procedures</u>. All information concerning or relating to the way LifeNet conducts its business that is not generally known to the public (such as internal business procedures, controls, plans, licensing techniques and practices, supplier, subcontractor and prime contractor names, contracts, and other vendor information, computer system passwords and other computer security controls, financial information, distributor information, and employee data) and the physical embodiments of such information (such as check lists, samples, services and operational manuals, contracts, proposals, print-outs, correspondence, forms, listings, ledgers, financial statements, financial reports, financial and operational analyses, financial and operational studies, management reports of every kind, databases, employment records pertaining to employees other than Employee, and any other written or machine-readable expressions of such information as are fixed in any tangible medium).

(iv) <u>Marketing Plans and Customer Lists and Strategic Business Information</u>. All information pertaining to LifeNet's marketing plans and strategies; forecasts and projections; marketing practices, procedures, and policies; financial data; discounts; margins; costs; credit terms; pricing practices, procedures, and policies; goals and objectives; quoting practices, procedures, and policies; customer data, including customer lists, contracts, representatives,

I-1207636.4

*NK 03/07/14*

requirements and needs, specifications, data provided by or about prospective existing or past customers and contract terms applicable to such customers, and the physical embodiments of such information (such as license agreements, customer lists, print-outs, databases, marketing plans, marketing reports, strategic business plans, marketing analyses and management reports, seminar and class attendee rosters, trade show or exhibit attendee listings, listings of potential customers and leads, and any other written or machine-readable expressions of such information as are fixed in any tangible medium).

(v) Not Generally Known. Any information in addition to the foregoing that is not generally known to the public or within the industry or trade in which LifeNet competes and the physical embodiments of such information in any tangible form, whether written or machine-readable in nature.

(c) General Knowledge. The general skills and experience gained during Employee's employment with LifeNet and information publicly available or generally known within the industry or trade in which LifeNet competes are not considered LifeNet Confidential Information. Also, upon termination of Employee's employment with LifeNet, Employee will not, subject to the other restrictions in this Agreement, be restricted from working with a person or entity that has independently developed information or materials similar to LifeNet Confidential Information as long as Employee complies with his/her continuing post-employment obligations under this Agreement.

(d) Publications and Speeches. During and after Employee's employment with LifeNet, Employee agrees not to submit any writing for publication or to deliver any speech that contains any LifeNet Confidential Information unless Employee receives advance written clearance from the Chief Executive Officer of LifeNet.

7. Intellectual Property. Employee acknowledges and agrees that LifeNet owns, and will own, whether as "works made for hire" or otherwise, any and all documents, designs, drawings, charts, computer program code, computer software, specifications, notes, inventions, improvements, discoveries, and other works of any kind (collectively, "Works") that Employee creates or develops (or has created or developed), whether alone or with others, in the course of Employee's employment with LifeNet, regardless of whether any such Work is in printed, mechanical, electronic, or other form and regardless of whether any such Work may be subject to patent, copyright, trademark, domain name, trade secret, mask work, or other legal protection. To the extent, if any, that LifeNet does not by operation of law automatically own all right, title, and interest in and to all such Works, Employee agrees to assign, and hereby does assign, to LifeNet any and all of his/her right, title, and interest in and to all such Works. Employee agrees to disclose promptly and routinely to LifeNet any and all Works and also agrees, upon LifeNet's request, promptly (a) to execute and deliver to LifeNet any and all documents and (b) to take any and all actions necessary or desirable for LifeNet to perfect and enjoy any of the rights owned by, or assigned to, LifeNet hereunder. Employee agrees never to exploit, challenge, seek to register, or assign or license to any third party, directly or indirectly anywhere in the world, any of the rights owned by, or assigned to, LifeNet hereunder. Employee understands that the term "moral rights" means any rights of paternity or integrity, including any right to claim authorship of a copyrightable work, any right to object to a modification of such copyrightable work, and any similar right existing under the judicial or statutory law of any country in the world or under any treaty, regardless of whether or not such right is denominated or generally referred to as a "moral right."

I-1207636.4

NK 03/07/14

Employee hereby waives forever and agrees never to assert any moral rights that he or she may have in any copyrightable work assigned to LifeNet hereunder, even following termination of Employee's employment with LifeNet (regardless of the reason or reasons for such termination).

8. <u>Non-Competition.</u> ███████████████

9. <u>Non-Solicitation of Customers.</u> During the Period of Protection, Employee shall not:

(a) ███████████████

(b) ███████████████

10. <u>Non-Piracy of Employees.</u> ███████████████



This prohibition against solicitation of employees shall not prohibit solicitation of employees for positions with businesses or entities which are not Competitive Businesses.

11. <u>Prior Contracts</u>. Employee represents and warrants that Employee's employment by LifeNet does not and will not result in a breach of any duty Employee owes to any other person, firm or entity, or otherwise violate any obligation of confidentiality to any such other person, firm or entity. Employee understands that LifeNet prohibits him or her from improperly bringing or using trade secrets or confidential information belonging to a former LifeNet or other third party.

12. <u>Application</u>. The provisions of this Agreement shall apply to any separation from employment, regardless of whether the Employee's separation is a resignation, retirement or a discharge and regardless of whether it is with or without cause.

13. <u>Remedies</u>. Employee acknowledges that the failure to adhere strictly to the requirements of this Agreement will cause substantial and irreparable harm to LifeNet. Accordingly, in the event Employee, at any time, violates any provision hereof, LifeNet shall be entitled to enforce all of the following cumulative remedies from time to time: (a) to obtain injunctive relief or other equitable remedy to cause cessation of activities in violation of the terms of this Agreement; and (b) to seek all damages proximately caused by such activities. Should the LifeNet substantially prevail in any such action, LifeNet shall be entitled to recover all expenses

NK 03/07/14

incurred including reasonable attorney's fees. In the event of such injunctive relief, Employee expressly waives the necessity of posting bond or security.

14. Consent. Employee may only avoid the requirements of this Agreement by obtaining the prior written consent of a duly authorized representative of LifeNet.

15. Effect of Claim by Employee. The real or perceived existence of any claim or cause of action by the Employee against LifeNet, whether predicated on this Agreement or some other basis, shall not relieve Employee of Employee's obligations under this Agreement and shall not constitute a defense to the enforcement by LifeNet of the restrictions and covenants contained herein.

16. No Waiver of Breach or Remedy. A waiver by LifeNet of the breach of any of the provisions of this Agreement by Employee shall not be deemed a waiver by LifeNet of any subsequent breach, nor shall recourse to any remedy hereunder be deemed a waiver of any other or further relief or remedy provided for herein.

17. Assignment. This Agreement shall be assignable by LifeNet (without the need for further written consent) to an affiliate or parent of LifeNet. This Agreement shall also be assignable to a successor entity (without the need for further written consent) if LifeNet (or a parent or affiliate to which this Agreement has been assigned) shall merge or consolidate with or into or transfer substantially all of its assets to such successor entity. Employee hereby agrees that this Agreement shall be binding upon and inure to the benefit of any entity to which this Agreement is assigned pursuant to the terms of this Paragraph. Neither Employee nor any beneficiaries may assign this Agreement or any part thereof without the written consent of LifeNet.

18. Governing Law and Jury Waiver. This Agreement, and the rights and obligations of LifeNet and Employee hereunder, will be governed by and construed in accordance with the laws of the Commonwealth of Virginia applicable to contracts made and to be performed therein and, if applicable, to the intellectual property laws of the United States. With respect to any suit, action, or proceeding relating to any dispute or controversy arising out of or relating to this Agreement, each party irrevocably: (a) consents and submits to the exclusive jurisdiction of any United States federal court or state court sitting in Norfolk, Virginia; (b) waives any objection that he/she may have at any time to the laying of venue of any such suit, action, or proceeding brought in such court; (c) waives any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum; (d) waives the right to object, with respect to any such claim, suit, action, or proceeding brought in any such court, that such court does not have jurisdiction over the party; and (e) waives all right to trial by jury.

19. Severability. Should any portion of this Agreement be found void or unenforceable for any reason by a Court of competent jurisdiction, and if such portion cannot be judicially modified to render it enforceable, the unenforceable portion shall be deemed severed from the remaining portions of this Agreement, which shall otherwise remain in full force and effect.

20. Reformation. If any provision of this Agreement is held to be unenforceable, then (to the fullest extent allowed by applicable law) this Agreement will be deemed amended to the extent necessary to render the otherwise unenforceable provision, and the rest of the Agreement, valid and enforceable.

I-1207636.4

*NK 03/07/14*

21. <u>Effective Date of this Agreement</u>. The Agreement shall go into effect as of the date it is signed by Employee.

22. <u>Entire Agreement</u>. This Agreement is the final, complete and exclusive agreement between LifeNet and Employee with respect to the subject matter hereof and supersedes and merges all prior discussions between LifeNet and Employee with respect to the subject matter hereof. No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing and signed by the LifeNet and Employee. Any subsequent change or changes in Employee's duties, salary or compensation will not affect the validity or scope of this Agreement.

**I HAVE READ THIS AGREEMENT CAREFULLY AND UNDERSTAND AND AGREE TO ITS TERMS.**

EMPLOYEE:

Signature: *Nathan Kemper*
Print Name: Nathan Kemper
Date: 03/07/14
Address: 5104 Kittery Landing
Virginia Beach, VA 23464

LifeNet

By: *Louis Chester Brazzell*
Name: Louis Chester Brazzell
Title: HR Vice President
Date: 3/11/14

I-1207636.4

NK 03/07/14

## EXHIBIT 1

## PRIOR PROPRIETARY INFORMATION (IF ANY)

N/A
NK 03/07/14

1-1207636.4

N/A
NK 03/07/14